**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LENWOOD HAMILTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LESTER SPEIGHT, EPIC GAMES, INC.,** | ) | **Case No. 2:17-cv-00169-AB** |
| **MICROSOFT, INC., MICROSOFT** | ) | |
| **STUDIOS, and THE COALITION,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

William T. Hangley
Bonnie M. Hoffman
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103

Elizabeth A. McNamara (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020

Ambika K. Doran (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101

Alison Schary (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006

*Counsel for Defendants Microsoft, Inc.,
Microsoft Studios, The Coalition, and Lester
Speight*

William T. Hangley
Bonnie M. Hoffman
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103

Robert C. Van Arnam (*pro hac vice*)
Andrew R. Shores (*pro hac vice*)
WILLIAMS MULLEN, P.C.
301 Fayetteville Street, Suite 1700
Raleigh, NC 27601

*Counsel for Defendant Epic Games, Inc.*

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................... 1

II.     ALLEGATIONS OF THE COMPLAINT ..................................................... 3

III.    ARGUMENT ................................................................................................. 6

        A.      Standard of Review ............................................................................ 6

        B.      The First Amendment Bars Hamilton's Claims .................................. 8

        C.      Hamilton Has Failed to Allege Facts Sufficient to Show the Video Games
                Incorporate His Likeness or Voice. ................................................ 14

        D.      Plaintiff Has Otherwise Failed to State a Claim. ............................. 17

                1.      Hamilton has failed to state a claim for violation of the Pennsylvania
                        right of publicity statute. ..................................................... 17

                2.      Hamilton has failed to state Lanham Act claims. .................... 18

                        a.      Hamilton has not pleaded sufficient facts to establish standing
                                under *Lexmark* ........................................................... 19

                        b.      Hamilton has not pleaded a false-endorsement claim under
                                Section 43(a)(1)(A) ..................................................... 19

                        c.      Plaintiff has not pleaded a false advertising claim ....................... 22

                3.      Hamilton has failed to state any common-law claims. ............ 22

        E.      Plaintiff's Claims Are Barred by Laches ......................................... 24

IV.     CONCLUSION ............................................................................................ 26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AFL Phila. LLC v. Krause*,
    639 F. Supp. 2d 512 (E.D. Pa. 2009) .....................................................................19

*Ahmed v. Hosting.com*,
    28 F. Supp. 3d 82 (D. Mass. 2014) ........................................................................19

*Allen v. Nat'l Video, Inc.*,
    610 F. Supp. 612 (S.D.N.Y. 1985) ........................................................................17

*Am. Diabetes Ass'n v. Friskney Family Tr., LLC*,
    177 F. Supp. 3d 855 (E.D. Pa. 2016) .....................................................................24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................4, 7, 18

*Baraka v. McGreevey*,
    481 F.3d 187 (3d Cir. 2007) .....................................................................................7

*Beauty Time, Inc. v. VU Skin Sys., Inc.*,
    118 F.3d 140 (3d Cir.1997) ...................................................................................25

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................7, 16

*Boring v. Google Inc.*,
    362 F. App'x 273 (3d Cir. 2010) ...........................................................................23

*Brown v. Elec. Arts, Inc.*,
    2009 WL 8763151 (C.D. Cal. Sept. 23, 2009),
    *aff'd*, 724 F.3d 1235 (9th Cir. 2013) .......................................................................7

*Brown v. Entm't Merchants Ass'n*,
    564 U.S. 786 (2011) ................................................................................8, 18, 22

*Buck v. Hampton Twp. School Dist.*,
    452 F.3d 256 (3d Cir. 2006) .....................................................................................7

*The Choice Is Yours, Inc. v. The Choice Is Yours*,
    2015 WL 5584302 (E.D. Pa. Sept. 22, 2015) .......................................................22

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
    25 Cal. 4th 387 (Cal. 2001) ..............................................................................10, 11

*Costanza v. Seinfeld,*
719 N.Y.S.2d 29 (N.Y. App. Div. 2001) ............................................................15

*Costanza v. Seinfeld,*
93 N.Y.S.2d 897 (N.Y. Sup. Ct. 1999) ..........................................................15, 16

*Dillinger, LLC v. Elec. Arts Inc.,*
2011 WL 2457678 (S.D. Ind. June 16, 2011) .........................................................10

*Dombrowski v. Pfister,*
380 U.S. 479 (1965) ................................................................................8

*Dranoff-Perlstein Assocs. v. Sklar,*
967 F.2d 852 (3d Cir. 1992) .......................................................................20

*Duncan v. Universal Music Group, Inc.,*
2012 WL 1965398 (E.D.N.Y. May 31, 2012) ......................................................15, 16

*E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.,*
547 F.3d 1095 (9th Cir. 2008) ....................................................................9, 10

*Eagle v. Morgan,*
2013 WL 943350 (E.D. Pa. Mar. 12, 2013) ..........................................................23

*ETW Corp. v. Jireh Publ'g, Inc.,*
332 F.3d 915 (6th Cir. 2003) ......................................................................20

*Facenda v. NFL Films, Inc.,*
488 F. Supp. 2d 491 (E.D. Pa. 2007),
*aff'd in part and vacated in part*, 542 F.3d 1007 (3d Cir. 2008) .............................22

*Facenda v. NFL Films, Inc.,*
542 F.3d 1007 (3d Cir. 2008) ............................................................. *passim*

*Fortres Grand Corp. v. Warner Bros. Entm't Inc.,*
947 F. Supp. 2d 922 (N.D. Ind. 2013), *aff'd*, 763 F.3d 696 (7th Cir. 2014) ..................21

*Fowler v. UPMC Shadyside,*
578 F.3d 203 (3d Cir. 2009) .........................................................................6

*Franchise Realty Interstate Corp. v. S.F. Local Joint Exec. Bd.,*
542 F.2d 1076 (9th Cir. 1976) ......................................................................8

*In re Friedman's Inc.,*
452 B.R. 512 (Bankr. D. Del. 2011) ................................................................5

*Gravano v. Take-Two Interactive Software, Inc.*,
    37 N.Y.S.3d 20 (N.Y. App. Div. 2016),
    *leave to appeal granted*, 2017 WL 628761 (N.Y. Feb. 16, 2017) ............................................9

*Hart v. Elec. Arts, Inc.*,
    717 F.3d 141 (3d Cir. 2013)................................................................. *passim*

*Hart v. Elec. Arts, Inc.*,
    740 F. Supp. 2d 658 (D.N.J. 2010) .......................................................7, 23

*Hooker v. Columbia Pictures Indus.*,
    551 F. Supp. 1060 (N.D. Ill.1982) ...........................................................15

*Interpace Corp. v. Lapp, Inc.*,
    721 F.2d 460 (3d Cir. 1983)....................................................................21

*Kirby v. Sega of America, Inc.*,
    144 Cal. App. 4th 47 (Cal. Ct. App. 2006) ................................... *passim*

*Leveto v. Lapina*,
    258 F.3d 156 (3d Cir. 2001)....................................................................7

*Lewis v. Marriott Int'l, Inc.*,
    527 F. Supp. 2d 422 (E.D. Pa. 2007) .................................................20, 22

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    134 S. Ct. 1377 (2014)..........................................................................19

*Martin v. Wendy's Int'l, Inc.*,
    183 F. Supp. 3d 925 (N.D. Ill. 2016) .....................................................19

*In re Mushroom Transp. Co.*,
    382 F.3d 325 (3d Cir. 2004)...................................................................24

*Nebb v. Bell Syndicate*,
    41 F. Supp. 929 (S.D.N.Y. 1941) ..........................................................15

*No Doubt v. Activision Publishing, Inc.*,
    122 Cal. Rptr. 3d 397 (Cal. Ct. App. 2011) .......................................12, 13

*Noriega v. Activision/Blizzard, Inc.*,
    2014 WL 5930149 (Cal. Super. Ct. Oct. 27, 2014) .................................9

*Parker v. Google, Inc.*,
    242 F. App'x 833 (3d Cir. 2007) ...........................................................22

*Phillips v. Cnty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008).....................................................................7

*Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*,
    468 A.2d 468 (Pa. 1983) ..................................................................................25

*Polydoros v. Twentieth Century Fox Film Corp.*,
    67 Cal. App. 4th 318 (Cal. Ct. App. 1997) ..................................................14, 16

*Reese v. Pook & Pook, LLC*,
    158 F. Supp. 3d 271 (E.D. Pa. 2016) ............................................................22

*Rifai v. CMS Med. Care Corp.*,
    2016 WL 739279 (E.D. Pa. Feb. 25, 2016) ....................................................24

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989)............................................................................10

*Romantics v. Activision Pub., Inc.*,
    574 F. Supp. 2d 758 (E.D. Mich. 2008).........................................................21

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*,
    181 F.3d 410 (3d Cir. 1999)............................................................................5

*Santana Prods. Inc. v. Bobrick Washroom Equip., Inc.*,
    401 F.3d 123 (3d Cir. Pa. 2005).....................................................................24

*Sarver v. Chartier*,
    813 F.3d 891 (9th Cir. 2016) ..........................................................................9

*Seale v. Gramercy Pictures*,
    949 F. Supp. 331 (E.D. Pa. 1996) .................................................................13

*Smith v. Pallman*,
    420 F. App'x 208 (3d Cir. 2011) ....................................................................7

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
    171 F.3d 912 (3d Cir. 1999)...........................................................................23

*Suzuki Motor Corp. v. Consumers Union*,
    330 F.3d 1110 (9th Cir. 2003) .........................................................................8

*Tamkin v. CBS Broad., Inc.*,
    193 Cal. App. 4th 133 (2011) ........................................................................15

*Toho Co. v. Sears, Roebuck & Co.*,
    645 F.2d 788 (9th Cir.1981) ..........................................................................21

*Varela v. Gonzales*,
    773 F.3d 704 (5th Cir. 2014) ...........................................................................4

*Washington Post Co. v. Keogh*,
　365 F.2d 965 (D.C. Cir. 1966) ...................................................................8, 13

*Washington v. Take-Two Interactive Software, Inc.*,
　2012 WL 5358709 (Cal. Ct. App. Oct. 31, 2012) ..................................12

*Winter v. DC Comics*,
　30 Cal. 4th 881 (Cal. 2003)............................................................10, 11

*World Wrestling Fed'n Entm't Inc. v. Big Dog*,
　280 F. Supp. 2d 413 (W.D. Pa. 2003).....................................................13

*Zeocrystal Indus., Inc. v. Fox Broad. Co.*,
　923 F. Supp. 132 (N.D. Ill.1996) .........................................................21

**Statutes**

The Lanham Act, Section 43 ......................................................... *passim*

42 Pa. Cons. Stat. § 5523(1) ...............................................................23, 24

42 Pa. Cons. Stat. § 5524(7) .......................................................................24

42 Pa. Cons. Stat. § 5525(a)(4) ...................................................................24

42 Pa. Cons. Stat. § 8316 .........................................................17, 18, 23, 24

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ...........................................1, 6, 7

5 McCarthy on Trademarks and Unfair Competition § 28:15 (4th ed.) .......................................20

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants Microsoft, Inc., Microsoft Studios, The Coalition ("Microsoft"[1]), Epic Games, Inc. ("Epic"), and Lester Speight ("Speight") (together, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff Lenwood Hamilton's claims with prejudice.

## I.   INTRODUCTION

More than a decade after the successful fantasy video game series *Gears of War* was first published, Plaintiff Lenwood "Hard Rock" Hamilton, a former wrestler and motivational speaker, now comes forward to claim that a fictional character in the series somehow resembles him.  Hamilton acknowledges that the series is an invented world that "features the troops of Delta Squad on the fictional planet Sera" and that Speight is credited as the persona behind intergalactic soldier Augustus "Cole Train" Cole.  Am. Compl. (Dkt. 16) ¶ 33.  Nonetheless, he asserts a panoply of claims that all rest on the contention that the "Cole Train" character appropriates his likeness because the two are both black, muscular, and played football; Cole's jersey number in the fictional game "thrashball" is 83 and Hamilton unsuccessfully tried out for the Philadelphia Eagles football team in 1983; and both have been depicted wearing similar clothing and have similar voices.  Based on these abstract similarities, Hamilton claims Speight, Epic Games and Microsoft (the games' alleged developer and publisher) misappropriated his right of publicity and violated the Lanham Act and, as a result, he is entitled to a portion of *Gears of War* proceeds.  Hamilton has failed to state a claim on which relief can be granted.

***First***, the First Amendment protects Defendants' alleged use of Hamilton's identity.  Like movies and novels, video games are "expressive speech" that "enjoy the full force of First Amendment protections."  *Hart v. Elec. Arts, Inc.*, 717 F.3d 141, 148 (3d Cir. 2013).  Even if the

---

[1] Microsoft Studios and The Coalition are trade names of Microsoft and its wholly owned subsidiaries, which Microsoft refers to in this motion as "Microsoft."

abstract features Hamilton identifies were sufficient to allege Cole is based on him, case after case establishes that the First Amendment safeguards storytellers and artists who take the raw materials of life—including the stories of real individuals—and transform them into art, be it books, movies, plays, or video games.  In short, any use of Hamilton's identity is a "transformative use" protected by the First Amendment.

**Second**, Hamilton has not alleged sufficient facts to support a finding that Defendants used his likeness.  The asserted similarities between Cole and Hamilton are far too generic and tenuous to suggest Cole is actually based on Hamilton.  Hamilton's claim, if accepted, would permit anyone to allege that a character in a fictional video game, book, film, or other creative work is based on him or her simply by relying on shared common characteristics like race or matters of pure happenstance.  This is not and cannot be the law.

**Third**, Hamilton has otherwise failed to allege facts supporting the elements of his claims.  For example, he has not alleged any commercial injury, a fundamental part of any Lanham Act claim.  He asserts a claim for false advertising under Section 43(a)(1)(B) of the Lanham Act, yet fails to allege that the Defendants made any false statements in advertising or promotion.  He asserts a claim for false endorsement under Section 43(a)(1)(A) of the Act, yet offers no facts to suggest his voice or likeness are protectable under that law, or that consumers were or were likely to be confused as to the person on whom Cole was based.  Hamilton's common law claims fail for similar and additional reasons described below.

**Finally**, laches bars Hamilton's claims.  Hamilton admits the first *Gears of War* game was released in 2006 and was a "commercial success," bringing in "[m]illions of dollars" in sales and winning prestigious awards.  Am. Compl. ¶¶ 32, 34.  Yet Hamilton did not bring this suit until *January 2017*—after the Defendants had invested more than a decade of time, effort and

money developing and promoting the game—and offers no justification for this delay other than that he was "not familiar with video games in general." *Id.* ¶ 47. Hamilton's inexcusable delay, which prejudices the Defendants, requires dismissal of his stale claims.

None of the theories Hamilton alleges are cognizable. Defendants therefore respectfully ask this Court to dismiss Hamilton's claims with prejudice.

## II.     ALLEGATIONS OF THE COMPLAINT

According to the allegations of the Amended Complaint, which Defendants accept for purposes of this motion, Hamilton is a former professional wrestler known as "Hard Rock" Hamilton. *Id.* ¶¶ 13, 17. During the 1983-84 National Football League season, he alleges, he tried out for the Philadelphia Eagles but did not make the team, resulting in a news article about his "hard scrabble life" and rape charges that were later dropped. *Id.* ¶¶ 9-10. Hamilton alleges he later played in the Canadian Football League, and in 1987—not 1983—he played a single NFL game for the Eagles. *Id.* ¶¶ 11-12. Hamilton also asserts he began wrestling professionally in 1988, with bouts in Pennsylvania, Puerto Rico, and Germany. *Id.* ¶ 13. During the 1990s, he alleges, he worked as a motivational speaker, and from 1997 through 2011, he promoted local wrestling bouts in Pennsylvania. *Id.* ¶¶ 14, 17, 38. Hamilton does not allege he has earned any money or otherwise commercially benefitted from endorsements, by appearing in any ads, or through any other use of his likeness or voice. *See generally id.*

Despite this, Hamilton seeks a portion of Defendants' profits from sales of the fantasy video game series *Gears of War* ("*Gears*"), which he claims was first developed and distributed by defendants Microsoft and Epic Games, because, he alleges, the likeness and voice of one (of many) characters—Augustus "Cole Train" Cole—are similar to his own. Am. Compl. ¶ 48.

As Hamilton alleges, Cole is one of the main characters in the *Gears* series, which

"features the troops of Delta Squad on the fictional planet Sera in a determined fight against a subterranean enemy known as the Locust Horde that is threatening human survival." *Id.* ¶ 33; *see also* Declaration of Ambika K. Doran Exs. A, C, E, G, I.  In the series, Cole is a black, muscular, well-known former athlete in the fictional sport "thrashball."  *See* Doran Decl. Ex. A-J.  Cole's uniform consists of heavy armor on his chest, legs, forearms, and hands, with his muscular upper arms left bare.  *See* Am. Compl. Ex. F (top image); Doran Decl. Exs. B, D, F, H.

Hamilton does not allege the *Gears* games have referred to him by name, or that his actual image is used in the games.  Nor does Hamilton allege he ever created voice recordings of any of the dialogue uttered by Cole in the decade plus the games have been sold.[2]  Instead, he alleges that Cole bears a "striking resemblance" to him and the character's voice "was his own." Compl. ¶¶ 48, 55.  Specifically, Hamilton alleges the following similarities between himself and Cole: (1) "both are black (and 'Cole Train' is the main black avatar in the *Gears of War* series)"; (2) "both played professional football (although in *Gears of War* the game played is called 'thrashball')"; (3) "Cole Train's number is 83 (same year that Hamilton played for the Philadelphia Eagles—1983)"[3]; (4) an image of Cole and promotional photo of Hamilton show them both wearing a derby hat and wristbands; and (5) there is "a striking resemblance of both

---

[2] Plaintiff attaches to his complaint the report of a purported "forensic voice examiner" opining that certain phrases voiced by Cole are the "same voice" as Hamilton's.  Am. Compl. ¶¶ 63-64. While the Court must accept all well-pleaded *facts* in the Amended Complaint, it need not accept an expert opinion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."); *see also Varela v. Gonzales*, 773 F.3d 704, 710 (5th Cir. 2014) (court should not consider opinions contained in expert report attached to complaint).  Regardless, Hamilton has not alleged any facts to support his claim that *Gears* uses his voice.  He does not, for example, allege recordings of him speaking the specific phrases from the *Gears* games existed prior to the games' release, or that any defendant had access to such recordings.

[3] This allegation conflicts with allegations in Paragraph 10 of the Amended Complaint, in which Hamilton asserts he did *not* play for the Eagles in the 1983-84 season.

physiognomy and body build." *Id.* ¶ 55.  Although Hamilton also alleges Cole has a gold front

tooth (as Hamilton does), this is evidently false, as can be established by a review of the games.

*See generally* Doran Decl. Exs. A, C, E, G, I; *see also, e.g.*, Doran Decl. Ex. B, Am. Compl. Ex.

F (top image).  Further, Cole does not wear a derby hat or wristbands in any standard player

mode of any *Gears* game, nor is he depicted with such clothing on the cover of any *Gears* game.

*See generally* Doran Decl. Exs. A, C, E, G, I.[4]  Instead, he is shown as bare-headed or wearing a

bandana.  *See id.* & *id.* Exs. B, D, F, H; *see also* Am. Compl. Ex. F (top image).[5]

Hamilton concedes the *Gears* games credit defendant Speight, another former

professional wrestler, as Cole's "human persona and voice."  Am. Compl. ¶ 33; *see also* Doran

Decl. Ex. B, D, F, H, J (crediting Lester Speight as "Cole Train"); Declaration of Lester Speight,

Exs. A, B; Am. Compl. ¶ 61 ("At all relevant times, Defendant Speight was the alleged

voiceover for the Gears of War character, Cole Train.").  Hamilton does not allege Speight

otherwise played any role in creating, producing, or distributing the *Gears* games.  Instead,

Hamilton alleges that in 1998, he sponsored an event featuring local wrestlers, including Speight,

at which the two allegedly discussed a potential video game that never materialized.  Am.

Compl. ¶¶ 22-23.

---

[4] The Court need not accept the complaint's allegations where a document the complaint relied on contradicts the allegations.  *See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 427 (3d Cir. 1999) (court could review opinion plaintiffs "specifically reference[d]" in complaint "to see if it contradicts the complaint's legal conclusions or factual claims"); *In re Friedman's Inc.*, 452 B.R. 512, 517 n.23 (Bankr. D. Del. 2011) ("If the allegations of the complaint are contradicted by documents made a part thereof, the document controls and the Court need not accept as true the allegations of the complaint.") (alterations, citation, and internal quotation marks omitted).  Because the Amended Complaint necessarily relies on the games, *infra* at III.A, the Court may consider the games and need not accept allegations contradicted by them.

[5] The image attached as Exhibit G to Hamilton's Amended Complaint is not a screenshot from standard gameplay, but instead shows an alternate character called "Superstar Cole," which players can "unlock" through advanced gameplay in *Gears 3*.  *See* Doran Decl. Ex. F; *see also id.* Exs. B, D, F, H (depicting Cole in standard gameplay).

Plaintiff alleges the first *Gears* game, developed by Epic Games and published by Microsoft more than a decade ago, won critical acclaim, including from video game critics who praised it as the "Game of the Year" for Microsoft's Xbox video game platform, and even that Speight won an award for "Best Voiceover" for his performance as Cole in the series. *Id.* ¶ 34. Following this success, Hamilton alleges, Epic Games developed and Microsoft published four subsequent installments in the series: *Gears of War 2* (released in 2008); *Gears of War 3* (released in 2011); *Gears of War: Judgment* (released in 2013); and *Gears of War 4* (released in 2016). *Id.* ¶¶ 36, 40, 43, 58; Doran Decl. Exs. A, C, E, G, I.  Hamilton alleges all installments of the series were a "commercial success," resulting in "[m]illions of dollars" of sales.  Am. Compl. ¶¶ 32, 37, 41, 44, 59.  He also alleges all versions of the *Gears* series "featured the same avatars" as in the first game, including the "Cole Train" character. *Id.* ¶¶ 35, 39, 42, 57.

Despite this acclaim, Hamilton asserts he first became aware of the "Cole Train" character on or about January 11, 2015, when a friend of his son told him a character in *Gears* "looked and sounded like" him. *Id.* ¶ 48.  Hamilton claims that before January 2015, he was "not familiar with video games in general." *Id.* ¶ 47.  Hamilton filed the Complaint on January 11, 2017 (Dkt. 1) and an Amended Complaint on February 14, 2017 (Dkt. 16).  He asserts claims for violation of the Lanham Act, the Pennsylvania right of publicity statute, and Pennsylvania common law torts. *See generally* Am. Compl.

## III.    ARGUMENT

### A.    Standard of Review.

A motion under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims.  In evaluating the motion, the Court must "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC*

*Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. at 679).  To

withstand such a motion, "[f]actual allegations must be enough to raise a right to relief above the

speculative level."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at

678.  Instead, the plaintiff must "plead[] factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing

*Twombly*, 550 U.S. at 556).  A court is "not compelled to accept unwarranted inferences,

unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v.*

*McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).  Further, "a complaint may be subject to dismissal

under Rule 12(b)(6) when an affirmative defense . . . appears on its face." *Leveto v. Lapina*, 258

F.3d 156, 161 (3d Cir. 2001) (alteration in original; citation, internal quotation marks omitted).

In deciding a motion to dismiss, the Court "may consider . . . any matters incorporated by

reference or integral to the claim . . . [and] items appearing in the record of the case." *Smith v.*

*Pallman*, 420 F. App'x 208, 213 (3d Cir. 2011) (first and third alterations in original) (quoting

*Buck v. Hampton Twp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)).  This Court may

therefore consider the *Gears* video games, which the Amended Complaint describes and

incorporates by reference.  Am. Compl. ¶¶ 32-44, 57-59.[6]  *See, e.g., Hart v. Elec. Arts, Inc.*, 740

F. Supp. 2d 658, 662-63 (D.N.J. 2010) (considering video games that allegedly misappropriated

plaintiff's identity on motion to dismiss); *Brown v. Elec. Arts, Inc.*, 2009 WL 8763151, at *1 n.1

---

[6] The Doran Declaration attaches copies of each of the *Gears* video games as well as screenshots from those games, and Microsoft has provided the Court with an Xbox One game console so the Court may review the games.

(C.D. Cal. Sept. 23, 2009) (video games on which plaintiff's Lanham Act claims were based were "incorporat[ed] by reference"), *aff'd*, 724 F.3d 1235 (9th Cir. 2013).

Resolving a lawsuit at the initial pleading stage is especially important where, as here, the claims target expressive works and implicate the First Amendment. Recognizing that meritless lawsuits have a pernicious effect on speech rights, the United States Supreme Court has observed that "[t]he chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution [of a lawsuit], unaffected by the prospects of its success or failure." *Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965). Because "the costs of a successful defense can be the same or greater than what the damage awards would have been," *Suzuki Motor Corp. v. Consumers Union*, 330 F.3d 1110, 1143 (9th Cir. 2003), publishers "will tend to become self-censors" unless they "are assured freedom from the harassment of lawsuits[.]" *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966). The "mere pendency" of such an "action will chill the exercise of First Amendment rights." *Franchise Realty Interstate Corp. v. S.F. Local Joint Exec. Bd.*, 542 F.2d 1076, 1082-83 (9th Cir. 1976).

### B.    The First Amendment Bars Plaintiff's Claims.

Even if Hamilton could allege the video games use his identity (and he cannot, *infra* at III.C), the Court still should dismiss his claims because any such use is "transformative" and protected by the First Amendment.

"[V]ideo games are protected as expressive speech under the First Amendment." *Hart*, 717 F.3d at 148. "Like the protected books, plays, and movies that preceded them, video games communicate ideas—and even social messages—through many familiar literary devices (such as characters, dialogue, plot, and music) and through features distinctive to the medium (such as the player's interaction with the virtual world)." *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 790 (2011). Where, as here, a plaintiff claims his identity was used in a video game, courts must

"balance the interests underlying the right to free expression" against the plaintiff's rights.  *Hart*, 717 F.3d at 149; *see also Facenda v. NFL Films, Inc.*, 542 F.3d 1007, 1032 (3d Cir. 2008) ("[C]ourts must circumscribe the right of publicity so that musicians, actors, and other voice artists do not get a right that extends beyond commercial advertisements to other works of artistic expression."); *Sarver v. Chartier*, 813 F.3d 891, 905 (9th Cir. 2016) (the First Amendment "safeguards the storytellers and artists who take the raw materials of life—including the stories of real individuals, ordinary or extraordinary—and transform them into art, be it articles, books, movies, or plays").

Courts are loath to dictate the content of fantasy video game worlds like the fictional planet Sera in *Gears*.  For example, in *Kirby v. Sega of America, Inc.*, 144 Cal. App. 4th 47 (Cal. Ct. App. 2006), the California Court of Appeal affirmed dismissal of a singer's Lanham Act and right of publicity claims over her alleged resemblance to a fictional reporter investigating an alien invasion in 25th-century outer space.  In *E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099-1101 (9th Cir. 2008), the Ninth Circuit affirmed dismissal of Lanham Act and state-law claims by the owner of the "Play Pen" strip club in Los Angeles over inclusion of a strip club called the "Pig Pen" in the fictional city "Los Santos" in the video game *Grand Theft Auto: San Andreas*.  *See also, e.g., Gravano v. Take-Two Interactive Software, Inc.*, 37 N.Y.S.3d 20, 22 (N.Y. App. Div. 2016) (affirming dismissal of right of publicity claims brought by actress and reality-television show star based on avatars in *Grand Theft Auto* that allegedly resembled them, without using their names), *leave to appeal granted*, 2017 WL 628761 (N.Y. Feb. 16, 2017); *Noriega v. Activision/Blizzard, Inc.*, 2014 WL 5930149, at *4 (Cal. Super. Ct. Oct. 27, 2014) (dismissing claim by former dictator Manuel Noriega over his depiction, among other historical characters, in fictional video-game world of *Call of Duty: Black Ops*).

To decide whether the First Amendment protects the use of a plaintiff's identity in an expressive work, the Third Circuit applies the "transformative use" test, first articulated in *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387 (Cal. 2001).[7]  *Hart*, 717 F.3d at 165.  Under this test, the First Amendment bars right of publicity claims when the work "contains significant transformative elements" or "the value of the work does not derive primarily from the celebrity's fame."  *Comedy III*, 25 Cal. 4th at 407.  "[T]he inquiry is whether the celebrity likeness is one of the 'raw materials' from which an original work is synthesized, or whether the depiction or imitation of the celebrity is the very sum and substance of the work in question."  *Id*. at 406.  Put another way, "[a] work is transformative if it adds 'new expression.' That expression alone is sufficient; it need not convey any 'meaning or message.'"  *Kirby*, 144 Cal. App. 4th at 60 (citations omitted); *Winter v. DC Comics*, 30 Cal. 4th 881, 891 (Cal. 2003).

---

[7] In analyzing right of publicity claims asserted under the Lanham Act, other circuit courts have applied a different test, from *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989).  The Third Circuit has not decided what test applies to a Lanham Act claim, but has in dicta expressed doubt that *Rogers* applies to claims other than those based on an allegedly infringing title (as in *Rogers* itself).  *See Hart*, 717 F. 3d at 157 (noting court had "expressed hesitation at extending the *Rogers* Test beyond the title of a work") (citing *Facenda*, 542 F.3d at 1018).  Were this Court to apply the *Rogers* test to the Lanham Act claims, Hamilton's claims are still deficient.  Under *Rogers*, the use of a plaintiff's name or identity does not violate the Lanham Act unless it has "no artistic relevance" to the work or is "explicitly mislead[ing] as to the source or content of the work."  875 F.2d at 999.  Here, the character of Cole plainly has "artistic relevance" to the game, as one of its main characters.  Further, Hamilton has not alleged the games "explicitly mislead" consumers to believe he sponsors or is affiliated with the *Gears* games.  "To be 'explicitly misleading,' the defendant's work must make some affirmative statement of the plaintiff's sponsorship or endorsement, beyond the mere use of plaintiff's name or other characteristic." *Dillinger, LLC v. Elec. Arts Inc*., 2011 WL 2457678, at *6 (S.D. Ind. June 16, 2011) (dismissing Lanham Act claim by estate of well-known gangster John Dillinger over "Dillinger" weapons in Godfather video game where plaintiff failed to identify any explicit misrepresentation); *see also E.S.S. Entm't 2000*, 547 F.3d at 1100 (rejecting Lanham Act claim by strip-club operator over virtual strip club in video game with similar name, explaining "[a] reasonable consumer would not think a company that owns one strip club in East Los Angeles, which is not well known to the public at large, also produces a technologically sophisticated video game like [Grand Theft Auto:] San Andreas").

The Third Circuit in *Hart* described a "spectrum" of transformative uses, with varying degrees of protection.  At one end is *Comedy III*.  There, the court held that an artist who produced and sold t-shirts and prints bearing a charcoal drawing of the Three Stooges had not sufficiently transformed the Three Stooges so as to bring the t-shirts within the protection of the First Amendment.  *Hart*, 717 F.3d at 159, 161.  At the other end of the spectrum is *Winter*.  In that case, the California Supreme Court dismissed privacy and misappropriation claims based on characters "Johnny and Edgar Autumn" in a comic book series, depicted as "cartoon characters" that are  "half-worm and half-human," finding they were a transformative use of the likenesses of the performers Johnny and Edgar Winter.  *Hart*, 717 F.3d at 160.  As the *Hart* court found, the *Comedy III* and *Winter* decisions "bookend the spectrum of cases applying the [t]ransformative [u]se [t]est.  Where *Comedy III* presents a clear example of a non-transformative use (i.e., mere literal depictions of celebrities recreated in a different medium), *Winter* offers a use that is highly transformative (i.e., fanciful characters, placed amidst a fanciful setting, that draw inspiration from celebrities)."  *Hart*, 717 F.3d at 161.

Misappropriations claims based on the use of a likeness in a fictional character in a fictional universe fall at the *Winter* end of the spectrum and are routinely dismissed.  For example, despite finding the space-age reporter "Ulala" "sufficiently reminiscent enough of [plaintiff]'s features and personal style to suggest imitation," the *Kirby* court dismissed the plaintiff's claims on First Amendment grounds because it found that Ulala was a "fanciful, creative character who exists in the context of a unique and expressive video game" and "not a mere imitation of Kirby."  144 Cal. App. 4th at 56, 59-61.  Although the court acknowledged that Kirby and Ulala "share[d] similarities," it found that Ulala's "typical hairstyle and primary

costume" differed from Kirby's public persona, and her setting in the game—"as a space-age reporter in the 25th century"—was "unlike any public depiction of Kirby." *Id.* at 59-60.

Similarly, in *Washington v. Take-Two Interactive Software, Inc.*, 2012 WL 5358709 (Cal. Ct. App. Oct. 31, 2012), the court affirmed dismissal of a model and backup singer's misappropriation of likeness claims based on a character in *Grand Theft Auto: San Andreas* that he claimed resembled him. The court noted the character was not a "literal depiction" of the plaintiff, dismissing the physical resemblance as "generic." Even "more importantly," the court found, the game contained "significant creative elements that ha[d] no apparent connection to" the plaintiff. The character in *Grand Theft Auto* navigated a fictional world, interacting with fictional characters and events with no analogue in the plaintiff's real life. *Id.* at *10-11.

Courts have only allowed claims arising out of video games to proceed in narrow, defined circumstances that are not present here: when an entirely realistic universe is created and players can "be" the athlete/celebrity, inhabiting a deliberately realistic avatar to engage in the same activities for which the person is famous. For example, the Third Circuit reversed a grant of summary judgment of a claim brought by a college football quarterback over video games that included an avatar with the same team affiliation, jersey number, statistics, and physical attributes, which the court considered to be a highly—and deliberately—"realistic" representation of the plaintiff. *Hart*, 717 F.3d at 168. The court held the plaintiff's identity was not sufficiently transformed because "[t]he digital Ryan Hart does what the actual Ryan Hart did while at Rutgers: he plays college football, in digital recreations of college football stadiums, filled with all the trappings of a college football game." *Id.* at 166. The *Hart* court relied on *No Doubt v. Activision Publishing, Inc.*, 122 Cal. Rptr. 3d 397 (Cal. Ct. App. 2011), which held that avatars of the band members of No Doubt—undisputedly "computer-generated recreations of the

real band members, painstakingly designed to mimic their likenesses"—were not sufficiently transformative in a game where players could perform No Doubt songs using those avatars. *Id.* at 409. The court concluded the avatars were nothing more than "exact depictions of No Doubt's members doing exactly what they do as celebrities." *Id.* at 410-11.

Here, the relationship between Hamilton and *Gears*—even if Hamilton had plausibly alleged one, *infra* at III.C—is squarely analogous to the facts in *Kirby* and *Washington*, and nothing like *Hart* and *No Doubt*. Hamilton alleges he is known from his days as the wrestler "Hard Rock" Hamilton. Am. Compl. ¶¶ 1, 17. But unlike the games in *Hart* and *No Doubt*, *Gears* is not a wrestling game where players can control an avatar named "Hard Rock," dressed in a way that matches Hamilton's wrestling costume. Rather, by Hamilton's own admission, "Cole Train" is an intergalactic soldier battling hostile subterranean aliens on a fictional planet. *Id.* ¶ 33. Even if Hamilton could show that Cole Train "resembles" him because both are black, muscular men, and even if he could point to certain similarities in their styles of dress, the character of "Cole Train" is so plainly transformative of "Hard Rock" Hamilton that Hamilton may not recover on any of his claims. *See generally* Doran Decl. Exs. A-J.

Since any use of Hamilton's likeness would be transformative, such use is fully protected by the First Amendment and all of his claims fail. *See, e.g.*, *Kirby*, 144 Cal. App. 4th at 59-62 (dismissing Lanham Act claims as well as state and common-law right of publicity claims over transformative use of plaintiff's identity); *World Wrestling Fed'n Entm't Inc. v. Big Dog*, 280 F. Supp. 2d 413, 445 (W.D. Pa. 2003) (dismissing Lanham Act and right of publicity claims over transformative, First Amendment-protected parody); *Seale v. Gramercy Pictures*, 949 F. Supp. 331, 337-40 (E.D. Pa. 1996) (dismissing Lanham Act and right of publicity claims on First Amendment grounds); *Facenda*, 542 F.3d at 1026 n.11 (noting that First Amendment issues in

right of publicity claims are "analogous" to those in Lanham Act context).

### C.   Plaintiff Has Failed to Allege Facts Sufficient to Show the Video Games Incorporate His Likeness or Voice.

Even if Hamilton could overcome the First Amendment bar to his claims (and he cannot), Hamilton has failed to allege facts sufficient to show that the *Gears* video games use his likeness or voice in the first place.  Because all of his claims are based on this fundamental premise, the Court may dismiss the Amended Complaint for this independent reason.

Courts do not hesitate to dismiss claims, like Hamilton's, centered on a misappropriation of identity where the plaintiff does not plausibly allege the defendant has used his identity in the challenged work.  A California appellate court rejected a similar claim in *Polydoros v. Twentieth Century Fox Film Corp*., 67 Cal. App. 4th 318 (Cal. Ct. App. 1997).  There, the plaintiff, Michael Polydoros, alleged the film "The Sandlot" used his identity without his permission by featuring a character named Michael Palledorous, nicknamed "Squints."  *Id.* at 320.  Polydoros grew up in a similar setting to that in the film, went to school with the person who wrote and directed the film, and, like "Squints," played baseball on a sandlot, swam in a community pool, and was "somewhat obstreperous."  *Id.* at 321.  The court dismissed the claims as a matter of law, noting that "rudimentary similarities in locale and boyhood activities do not make [the film] about appellant's life . . . . The faint outlines appellant has seized upon do not transform fiction into fact."  *Id.* at 323; *see also id.* at 325 ("[Plaintiff] is not entitled to recover under a commercial appropriation of name or likeness theory merely because [defendants] used a name that sounds like appellant's name or employed an actor who resembles appellant at the age of 10. Because respondents were creating a fictionalized artistic work, their endeavor is constitutionally protected.").

The court reached the same result in *Costanza v. Seinfeld*, 93 N.Y.S.2d 897 (N.Y. Sup. Ct. 1999). There, a man named Michael Costanza sued comedian Jerry Seinfeld and the producers of his eponymous sitcom, claiming the character "George Costanza" on the long-running show misappropriated his identity and defamed him. The plaintiff argued that in addition to sharing the same last name, both he and the character were "short, fat, [and] bald" and hailed from Queens (as did Seinfeld). *Id.* at 899. The lower court rejected the plaintiff's claim on a motion to dismiss and the appellate court affirmed, noting that "[i]t is undisputed that defendants have never used plaintiff's actual name, or filmed plaintiff himself or made use of a photograph of plaintiff, in any form." *Costanza v. Seinfeld*, 719 N.Y.S.2d 29, 30 (N.Y. App. Div. 2001). And in *Duncan v. Universal Music Group, Inc.*, 2012 WL 1965398 (E.D.N.Y. May 31, 2012), a federal court dismissed plaintiff's claim that his identity was used by characters in two movies, one which allegedly shared plaintiff's prison-gang nickname and the other that he claimed was linked to his identity by "numeric codes" (for example, that a train car appeared in the movie with numbers similar to his birthdate, or that digits of his former address added up to "13," which was the title of the movie and affiliated with the character in question). *Id.* at *1. The court found no use of the plaintiff's name, likeness, or voice, and noted that the "numeric codes" link was far too "attenuated" for any "rational viewer" to connect the plaintiff and the character. *Id.* at *3.[8]

---

[8] *See also, e.g.*, *Tamkin v. CBS Broad., Inc.*, 193 Cal. App. 4th 133, 146-48 (2011) (rejecting defamation claim based on fictional work where character and plaintiff shared same name, had wives with same name, both worked in real estate, and the writer had met the plaintiff because "no reasonable person would have understood the casting synopsis for the fictional Scott Tamkin as referring to the real Scott Tamkin"); *Hooker v. Columbia Pictures Indus.*, 551 F. Supp. 1060, 1062-64 (N.D. Ill.1982) (dismissing right of publicity and Lanham Act claims brought by a professional woodcarver in Illinois named T.J. Hooker against producers of television series about a fictional police officer in California with the same name); *Nebb v. Bell Syndicate*, 41 F. Supp. 929, 930 (S.D.N.Y. 1941) (dismissing right of publicity claim where "defendants, who

Here, Hamilton has failed to allege anything other than an "attenuated" connection between Cole and himself, and he has not alleged any facts that a "rational viewer" could use to connect the two.  Hamilton alleges he and Cole are similar because they are both black and muscular (Am. Compl. ¶ 55)—a description that would apply to thousands of other individuals, *including Speight*.  Hamilton also alleges Cole played the fictional game "thrashball" while wearing the number 83, and attaches significance to this fact because he tried out (but did not play) for the Philadelphia Eagles in the year 1983.  *Id.*  Finally, Hamilton also alleges two images show him and Cole with a gold tooth wearing derby hats and wristbands; yet these items are hardly unique to Hamilton, and Cole does not have a front gold tooth.  *See* Am. Compl. Ex. F (top image), Doran Decl. Ex. B.  In short, the alleged overlap of the number "83"—like the theory of "numeric codes" in *Duncan*, or generic similarities in appearance or background in *Costanza* and *Polydoros*—are just the kind of "rudimentary similarities" that fail to connect him to the fictional character Cole.  *See Polydoros*, 67 Cal. App. 4th at 323.

Hamilton has not pleaded sufficient similarities between himself and Cole that would "nudge[] [his] claim[] across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  Accordingly, no matter how many ways he tries to dress up this alleged misappropriation— whether as a Lanham Act violation, a common-law claim for misappropriation of identity or publicity, a statutory right of publicity claim, or a claim for unjust enrichment—his claims fail because he cannot plausibly allege the Defendants used his identity in the first place.

---

publish a comic strip in a newspaper in Tarrytown, New York, happened to describe one of their obviously fictitious characters as 'Rudy Nebb' with no intention of referring to the Rudy Nebbs of Georgia, whom the defendants had never before heard of").

**D.      Plaintiff Has Otherwise Failed to State a Claim.**

Hamilton's claims also fail for the following independently sufficient reasons. [9]

**1.      Plaintiff has failed to state a claim for violation of the Pennsylvania right of publicity statute.**

Hamilton's claims under the Pennsylvania right of publicity statute fail because video games are expressive works exempted from the statute's purview and because, as against Microsoft and Epic, Hamilton has failed to allege the requisite knowledge.

Under Pennsylvania law, "[a]ny natural person whose name or likeness has commercial value and *is used for any commercial or advertising purpose*" without consent may sue for an injunction and damages.  42 Pa. Cons. Stat. § 8316(a) (emphasis added); *see also Facenda*, 542 F.3d at 1025.  The statute "focuses solely on the commercial-advertising context" and "is targeted at endorsements, not the full universe of creative works."  *Facenda*, 542 F.3d at 1032. Accordingly, the statute excludes "expressive works" from the definition of "commercial or advertising purpose" and thus the statutory claim.  42 Pa. Cons. Stat. §§ 8316(e)(iii), (v).

The statute defines an "expressive work" broadly, to include a "literary, dramatic, *fictional*, historical, *audiovisual* or musical work *regardless of the communications medium* by which it is exhibited, displayed, performed or transmitted."  42 Pa. Cons. Stat. § 8316(e) (emphasis added).  Under this broad definition, video games like the *Gears* series qualify as

---

[9] Further, all of Hamilton's claims against Speight are deficient because Hamilton does not allege sufficient involvement by Speight in the creation, development, publication, or promotion of the *Gears* series.  Hamilton does not allege Speight played any role in designing the art or concept for "Cole Train" or otherwise developing, producing, or publishing the games.  Nor does Hamilton allege any facts to plausibly claim that Speight knowingly participated in the *Gears* series as a "sound-alike" or "look-alike" for Hamilton.  *Cf. Allen v. Nat'l Video, Inc.*, 610 F. Supp. 612, 629 (S.D.N.Y. 1985).  At most, Hamilton alleges that Speight contributed his *own* voice and persona to the game; Hamilton looks and sounds similar to Speight; and the two have met. These allegations are not sufficient to state any claims against Speight.

"expressive works." *See Hart*, 717 F.3d at 148; *Brown*, 564 U.S. at 790.  Accordingly, Hamilton

cannot state a claim under the Pennsylvania statute for use of his likeness in the *Gears* games or

in any advertising promoting the games.

Further, the Pennsylvania statute states that no person "shall be held liable under this

section unless they had actual knowledge of the unauthorized use of the name or likeness of a

natural person as prohibited by this section."  42 Pa. Cons. Stat. § 8316(d).  Hamilton does not

allege any meeting, interaction, relationship, or even awareness of his existence by Microsoft or

Epic before publishing any *Gears* games.  Accordingly, he has not alleged sufficient plausible

facts to defeat their immunity under the statute.  *See Iqbal*, 556 U.S. at 678.

### 2. Plaintiff has failed to state Lanham Act claims.

Hamilton's allegations do not even begin to state viable claims under Section 43(a)(1) of

the Lanham Act.[10]  Am. Compl. ¶¶ 80-85.  Initially, Hamilton has not alleged commercial injury

and therefore lacks standing under Section 43(a)(1) generally.  Further, his claim under Section

43(a)(1)(A) fails because he has not alleged he has a protectable interest in his likeness or voice

or that the Defendants' use of those attributes are likely to cause confusion among the public as

---

[10] Section 43(a)(1) of the Lanham Act (15 U.S.C. § 1125(a)(1)) states that:

> [a]ny person who, on or in connection with any goods or services, or any
> container for goods, uses in commerce any word, term, name, symbol, or device,
> or any combination thereof, or any false designation of origin, false or misleading
> description of fact, or false or misleading representation of fact, which—
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the
> > affiliation, connection, or association of such person with another person,
> > or as to the origin, sponsorship, or approval of his or her goods, services,
> > or commercial activities by another person …
> >
> > (B) in commercial advertising or promotion, misrepresents the nature,
> > characteristics, qualities, or geographic origin of his or her or another
> > person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is
> likely to be damaged by such act.

to Hamilton's sponsorship or approval of the *Gears* series.  Similarly, his Section 43(a)(1)(B) claim fails because he does not allege that the Defendants used his likeness or voice in advertising or promotion, as is required to state such a claim.

> **a.   Plaintiff has not pleaded sufficient facts to establish standing under *Lexmark.***

To state any prima facie claim under Section 43(a), a plaintiff must allege injury to a "commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1395 (2014).  Here, Plaintiff has not even attempted to plead commercial harm.  He does not, for example, allege he has lost endorsement revenue, or his commercial reputation has suffered as a result of association with *Gears* games.  In fact, he makes *no allegation of damage whatsoever*; instead, he seeks to obtain a royalty and share in the defendants' profits from *Gears*.  Am. Compl. ¶¶ 82, 85.  That is insufficient to survive a motion to dismiss.  *See Ahmed v. Hosting.com*, 28 F. Supp. 3d 82, 91 (D. Mass. 2014) (dismissing Lanham Act claim for lack of standing under *Lexmark* where plaintiff failed to allege any facts in the complaint establishing "a commercial injury caused by the alleged infringement"); *cf. Lexmark*, 134 S. Ct. at 1393 (plausible allegations of "lost sales" or "damage to . . . business reputation" are sufficient to establish standing for a false-advertising claim). [11]

> **b.   Plaintiff has not pleaded a false-endorsement claim under Section 43(a)(1)(A).**

Nor has Hamilton alleged a claim for violation of Section 43(a)(1)(A), the traditional

---

[11] Although *Lexmark* arose in a false-advertising case, numerous courts have applied its analysis to false-endorsement cases as well.  *See Martin v. Wendy's Int'l, Inc.*, 183 F. Supp. 3d 925, 932 n.4 (N.D. Ill. 2016) (collecting cases); *see also AFL Phila. LLC v. Krause*, 639 F. Supp. 2d 512, 522 (E.D. Pa. 2009) (declining to distinguish between false-endorsement and false-advertising cases for pre-*Lexmark* version of standing analysis).

vehicle for right of publicity claims under the Lanham Act.  *See* 5 McCarthy on Trademarks and Unfair Competition § 28:15 (4th ed.) ("[A]lmost all courts have put false endorsement cases within the infringement prong of § 43(a)(1)(A), not within the false advertising prong of § 43(a)(1)(B).").  "False endorsement occurs when a celebrity's identity is connected with a product or service in such a way that consumers are likely to be misled about the celebrity's sponsorship or approval of the product or service."  *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 925-26 (6th Cir. 2003) (painting depicting Tiger Woods in multiple poses did not violate Lanham Act or right of publicity).  To state a claim for false endorsement, a plaintiff must allege sufficient facts to assert: (1) his mark is legally protectable; (2) he owns the mark; and (3) defendant's use of the mark to identify its goods or services is likely to create confusion concerning the plaintiff's sponsorship or approval of those goods or services.  *Facenda*, 542 F.3d at 1014.  Here, Hamilton has failed to allege his "mark" is legally protectable or that the Defendants' use of that mark is likely to cause confusion.

Plaintiff does not plausibly allege facts to suggest his voice or likeness merit protection under the Lanham Act.  Plaintiff alleges in conclusory fashion that generic features such as a derby hat, gold tooth, and wristbands are "unregistered marks."  Am. Compl. ¶¶ 54-55.[12]  But he has not made any *factual allegations* to support a protectable interest in these attributes.  *See Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 855 (3d Cir. 1992) (federal trademark law extends protection to an unregistered mark only "if the public recognizes it as identifying the claimant's goods or services and distinguishing them from those of others") (citation and internal quotation marks omitted); *cf. Lewis v. Marriott Int'l, Inc.*, 527 F. Supp. 2d 422, 426-28 (E.D. Pa.

---

[12] To support this allegation, Hamilton attaches a photograph of a purported "Hard Rock Hamilton sweatshirt" showing a "caricature of Hamilton's persona."  Am. Compl. ¶ 55, Ex. H. But he does not allege the caricature has ever been registered as a trademark or used in commerce, nor that it appears in any *Gears* games.

2007) (denying motion to dismiss where chef alleged substantial "sales and advertising revenue" resulting from association of his name with wedding-planning packages and "actual confusion" by customers when hotel continued to use his name without consent).  Similarly, Hamilton provides no facts to suggest his voice is distinctive.  *See Romantics v. Activision Pub., Inc.*, 574 F. Supp. 2d 758, 769-70 (E.D. Mich. 2008) (holding that rock band's non-distinctive sound was not a protectable mark for purposes of a Lanham Act claim against video game producer).

Hamilton's false endorsement claim also fails because he has made no factual allegations to support a finding of likelihood of confusion by consumers under the ten-factor test in *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983) (or the modified eight-factor version adopted for false-endorsement claims in *Facenda*, 542 F.23d at 1018-20).  Hamilton has not, for example, alleged any facts to support that any defendant intended to or did confuse customers into believing that *Hamilton* was associated with the games—nor could he, considering his allegation that *Speight* is and has always been credited as the actor behind Cole Train.  Courts do not hesitate to dismiss claims when presented with similarly deficient pleadings.  *See Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 947 F. Supp. 2d 922, 930-33 (N.D. Ind. 2013) (dismissing Lanham Act claims by manufacturer of "Clean Slate" software over references to a fictional "clean slate" program in movie *The Dark Knight Rises*, finding no likelihood of confusion between plaintiff's software product and defendant's film), *aff'd*, 763 F.3d 696 (7th Cir. 2014); *Zeocrystal Indus., Inc. v. Fox Broad. Co.*, 923 F. Supp. 132, 134 (N.D. Ill.1996) (plaintiff that manufactured crystals for odor removal failed to allege Lanham Act claim over "wholly different and fanciful use[]" of similarly named magic weapon in children's show "Power Rangers"); *Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 790-91 (9th Cir.1981) (affirming dismissal of Lanham Act claim by "Godzilla" creators over "Bagzilla" garbage bags,

finding no likelihood of confusion where plaintiff produces literary works and toys and defendant sells garbage bags).

### c. Plaintiff has not pleaded a false advertising claim.

In addition to his failure to allege standing and a protectable mark, Hamilton's claim under Section 43(a)(1)(B) fails because he has not alleged Defendants used his identity "in commercial advertising or promotion," as the statute expressly requires. *See Parker v. Google, Inc.*, 242 F. App'x 833, 839 (3d Cir. 2007) (dismissing claim under Section 43(a)(1)(B) where plaintiff failed to allege that statements at issue were "made in the context of commercial advertising or promotion"); *Reese v. Pook & Pook, LLC*, 158 F. Supp. 3d 271, 286, 295 (E.D. Pa. 2016) (dismissing false-advertising claim based on contents of article because it did not constitute "commercial advertising or promotion"). Instead, he alleges only use of his identity within the video games themselves, which are *not* commercial speech, but expressive works fully protected by the First Amendment. *Brown*, 564 U.S. at 790.

### 3. Plaintiff has failed to state any common-law claims.

Hamilton has also failed to allege facts to support his common-law claims for misappropriation of publicity, invasion of privacy by misappropriation, and unjust enrichment.

*First*, it does not appear that a misappropriation tort even exists. This Court has held "[t]o the extent that there was ever a common law cause of action for misappropriation of identity, it is clearly subsumed now by [the Pennsylvania statute]." *Facenda v. NFL Films, Inc.*, 488 F. Supp. 2d 491, 513 (E.D. Pa. 2007) (finding that statutory claim subsumed common-law privacy tort), *aff'd in part and vacated in part*, 542 F.3d 1007 (3d Cir. 2008). In dicta, the Third Circuit appeared to accept that reasoning. *Facenda*, 542 F.3d at 1013 n.2. *But see Lewis*, 527 F. Supp. 2d at 429 (declining to find that statute subsumed common-law tort). *See also The Choice Is Yours, Inc. v. The Choice Is Yours*, 2015 WL 5584302, at *4 (E.D. Pa. Sept. 22, 2015) (noting

conflicting cases but finding plaintiff's claim failed as a matter of law under any theory).

*Second*, given the obvious lack of similarity between Hamilton and Cole Train—and Hamilton's allegation that the character has always been expressly credited to defendant Speight, and never to himself—Hamilton cannot plausibly allege that Defendants have used his likeness in the first place, *supra* at III.B, much less that they appropriated some sort of value or benefit, commercial or otherwise.  *See Eagle v. Morgan,* 2013 WL 943350, at *7-8 (E.D. Pa. Mar. 12, 2013) (noting Pennsylvania has adopted rules from Restatement (Second) of Torts; invasion of privacy by misappropriation of identity requires defendant to have "appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of plaintiff's name or likeness"; misappropriation of publicity requires defendant to have "appropriat[ed] [plaintiff's] valuable name or likeness . . . [and used] it to defendant's commercial advantage") (citation and internal quotation marks omitted).[13]

*Third*, Hamilton has failed to state a claim for unjust enrichment because he has not alleged any contractual or quasi-contractual relationship between himself and Defendants. "Unjust enrichment is typically invoked . . . when plaintiff seeks to recover from defendant for a benefit conferred under an unconsummated or void contract."  *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 936 (3d Cir. 1999).  Such a claim "makes sense in cases involving a contract or a quasi-contract, but not, as here, where plaintiffs are claiming damages for torts committed against them by the defendant."  *Boring v. Google Inc.*, 362 F. App'x 273, 282 (3d Cir. 2010) (citation and internal quotation marks omitted); *see also Hart*, 740 F. Supp. 2d at 670 (dismissing unjust enrichment claim; "because Plaintiff alleges in

---

[13] In addition, because Hamilton admits he knew about *Gears* no later than January 2015, his invasion of privacy claim is barred by the applicable one-year statute of limitations.  42 Pa. Cons. Stat. § 5523(1).

his Amended Complaint that Defendant did not seek his permission before using his likeness or photograph, Plaintiff clearly did not confer any benefit upon Defendant").

### E.        Plaintiff's Claims Are Barred by Laches.

Finally, the doctrine of laches bars all of Hamilton's claims.  Laches provides "an equitable bar to the prosecution of stale claims and stands for the proposition that those who sleep on their rights must awaken to the consequence that they have disappeared."  *Am. Diabetes Ass'n v. Friskney Family Tr., LLC*, 177 F. Supp. 3d 855, 878 (E.D. Pa. 2016) (citation and internal quotation marks omitted).  Here, Hamilton waited *more than a decade* after the first introduction of Cole Train in *Gears* to bring this suit—many years past the statute of limitations for any of his claims—causing prejudice to the Defendants as they invested time and money into developing multiple versions of these games.

A court may find laches where, as here, there is an "inexcusable delay in instituting suit" and "prejudice to the defendant."  *Am. Diabetes Ass'n,* 177 F. Supp. 3d at 878 (quoting *In re Mushroom Transp. Co.*, 382 F.3d 325, 337 (3d Cir. 2004)).  Where the applicable statutory period has run, laches is presumed and the plaintiff must rebut that presumption.  *Id*.  Here, Hamilton's claims are subject to a variety of statutory periods, ranging from one year on his invasion of privacy claims to six years for his Lanham Act claims.[14]

The statutory period for laches begins to run when "the right to institute and maintain the

---

[14] Plaintiff's claims are subject to the following statutes of limitations: Lanham Act, six years (*Santana Prods. Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 135 (3d Cir. Pa. 2005)); unjust enrichment, four years (42 Pa. Cons. Stat. § 5525(a)(4)); misappropriation of publicity, two years (42 Pa. Cons. Stat. § 5524(7)); *see also Rifai v. CMS Med. Care Corp.*, 2016 WL 739279, at *2 (E.D. Pa. Feb. 25, 2016)); invasion of privacy by misappropriation of identity, one year (42 Pa. Cons. Stat. § 5523(1)). While the Pennsylvania statute authorizing claims for misappropriation of likeness (42 Pa. Cons. Stat. § 8316) does not contain a limitations period, it is likely subject to the two-year limitation for property claims or the one-year limitation for privacy claims.

suit arises." *Beauty Time, Inc. v. VU Skin Sys., Inc.*, 118 F.3d 140, 144 (3d Cir.1997) (quoting *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983)).  Here, Hamilton has alleged the series was a broad commercial success with "millions of dollars" in sales and won acclaim and industry awards from its first publication, and that the same Cole Train avatar over which he now sues was included in the game from its inception.  Am. Compl. ¶¶ 32, 34, 37, 41, 44, 59.  By his own pleading, Hamilton was plainly on constructive notice of the *Gears* games from November 2006 and could have discovered them with any due diligence.

Hamilton is likely to argue that the statutory period for his claims should be tolled until January 10, 2015, when he allegedly "discovered" the *Gears* games through a friend of his son.  But "lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations."  *Pocono Int'l Raceway*, 458 A.2d at 471.  "[T]he 'discovery rule' exception arises from the inability, despite the exercise of diligence, to determine the injury or its cause, *not upon a retrospective view of whether the facts were actually ascertained within the period*."  *Id.* at 471-72 (emphasis added).  Hamilton did not exercise diligence here.

Finally, by sitting on his rights, Hamilton has caused prejudice to Defendants.  Hamilton alleges that as of January 2014, over 22 million units of *Gears* games had been sold, with sales revenue of "over $1 billion."  Am. Compl. ¶ 46.  Now, after more than a decade during which Defendants invested time and money in the design, production, and marketing necessary to create such a valuable video game franchise, Hamilton seeks to appropriate that value for himself.  This Court should not countenance Hamilton's belated arrival to his claims and should dismiss the Amended Complaint in its entirety.

## IV.   CONCLUSION

For these reasons, Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice.

Dated: March 8, 2017

Respectfully submitted,

**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**

/s/ William T. Hangley
William T. Hangley
Bonnie M. Hoffman
One Logan Square, 27th Floor
Philadelphia, PA 19103

Elizabeth A. McNamara (*pro hac vice*)
**DAVIS WRIGHT TREMAINE LLP**
1251 Avenue of the Americas, 21st Floor
New York, NY 10020

Ambika K. Doran (*pro hac vice*)
**DAVIS WRIGHT TREMAINE LLP**
1201 Third Avenue, Suite 2200
Seattle, WA 98101

Alison Schary (*pro hac vice*)
**DAVIS WRIGHT TREMAINE LLP**
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006

*Counsel for Defendants Microsoft, Inc.,
Microsoft Studios, The Coalition, and Lester
Speight*

**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**

/s/ William T. Hangley
William T. Hangley
Bonnie M. Hoffman
One Logan Square, 27th Floor
Philadelphia, PA 19103

Robert C. Van Arnam (*pro hac vice*)
Andrew R. Shores (*pro hac vice*)
**WILLIAMS MULLEN, P.C.**
301 Fayetteville Street, Suite 1700
Raleigh, NC 27601

*Counsel for Defendant Epic Games, Inc.*