**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LENWOOD HAMILTON, <br> Plaintiff, <br><br> v. <br><br> LESTER SPEIGHT, *et al.*, <br> Defendants. | CIVIL ACTION <br> No. 2:17-cv-00169-AB |

**September 26, 2019**                                                  **Anita B. Brody, J.**

<u>**MEMORANDUM**</u>

Plaintiff Lenwood Hamilton ("Hamilton") is a former professional wrestler and football player.  In the 1990s, Hamilton created and performed as the character Hard Rock Hamilton with Soul City Wrestling, a now-defunct, family-friendly professional wrestling organization that Hamilton created.  Hamilton alleges that Defendants Microsoft, Inc., Microsoft Studios, The Coalition, Epic Games, Inc., and Lester Speight (collectively, "Defendants") misappropriated the Hard Rock Hamilton character when they created Augustus Cole ("the Cole character"), also referred to in-game as Cole Train, for the popular *Gears of War* video game series.[1]  In the *Gears of War* series, the Cole character is not a wrestler but a fictional soldier who engages in highly stylized cartoon violence against formerly subterranean reptilian humanoids on a fictional Earth-like planet, Sera.

Defendants move for summary judgment on the grounds that the First Amendment right

---

[1] Specifically, Hamilton alleges several causes of action relating to Defendants' violation of Hamilton's right of publicity: (1) a statutory claim for unauthorized use of name or likeness under 42 Pa. C.S.A. § 8316; (2) a common law claim for misappropriation of publicity; (3) a common law claim for invasion of privacy by misappropriation of identity; and (4) a cause of action for unjust enrichment stemming from Defendants' use of his likeness.  *See* Second Am. Compl. ¶¶ 86-93; 97-99; 100-102; 103-105.

to free expression bars each of Hamilton's claims.[2]  Even taking the facts in the light most

favorable to Hamilton for the purposes of summary judgment, the First Amendment bars

Hamilton's claims.  Defendants' right to free expression outweighs Hamilton's right of publicity

in this case because the Cole character is a transformative use of the Hard Rock Hamilton

character.  For this reason, I will grant Defendants' motion for summary judgment.[3]

## I.  BACKGROUND[4]

### 1.  Lenwood Hamilton, Soul City Wrestling, and the Hard Rock Hamilton Persona

In the 1990s, Plaintiff Lenwood Hamilton ("Plaintiff" or "Hamilton") worked as a

professional wrestler.  As a wrestler, Hamilton was known as Hard Rock Hamilton.  Hamilton's

Hard Rock Hamilton persona donned a unique look with a distinctive approach to costume,

dress, and appearance.[5]

Hamilton performed as Hard Rock Hamilton in Hamilton's own local professional

wrestling organization, called Soul City Wrestling.  Soul City Wrestling was designed to be

family-friendly professional wrestling entertainment.  Beginning in 1997, Soul City Wrestling

promoted and held professional wrestling bouts at numerous venues in and around Philadelphia

and elsewhere.  Hard Rock Hamilton was often featured as the main event at Soul City Wrestling

and was the Soul City Heavyweight Champion of the World.  Hamilton promoted Soul City

Wrestling in local broadcast and newspaper media, including local television news, the

Philadelphia Inquirer, Philadelphia Sunday Sun, Philadelphia Daily News, and Norristown

---

[2] Defendants also argue, among other things, that Hamilton fails to carry his burden on summary judgment.  Because I will grant Defendants' motion on First Amendment grounds, I do not reach Defendants' other arguments.  This is because even where a defendant actually "infringes on the right of publicity," courts may look to "whether the right to freedom of expression overpowers the right to publicity" regardless of "the elements of the tort or whether [the defendant's] actions satisfy this standard."  *Hart v. Elec. Arts, Inc.*, 717 F.3d 141, 150 n.12 (3d Cir. 2013).
[3] I exercise diversity jurisdiction in this case pursuant to 28 U.S.C. § 1332.
[4] I take all facts in the light most favorable to the non-moving party, Hamilton.
[5] An image of Hamilton as Hard Rock Hamilton is appended to this memorandum as Appendix A.

Times Herald.  While developing Soul City Wrestling, Hamilton also worked as a motivational speaker in Philadelphia.

Before his work as a professional wrestler, Hamilton played football at NCAA Division I football programs and went on to become a professional football player.  Hamilton played one game for the Philadelphia Eagles during the strike-affected 1987 NFL football season.

In 1998, Defendant Lester Speight ("Speight") joined Soul City Wrestling, where he donned the wrestling persona Rasta the Voodoo Mon.  Speight knew of Hamilton and his Hard Rock Hamilton persona.  On July 25, 1998, Soul City Wrestling sponsored a wrestling event at Viking Hall in Philadelphia, which featured Hamilton as Hard Rock Hamilton and Speight in his "Rasta" persona.  During the after-party for that event, Speight discussed plans for a violent shoot 'em up video game with Hamilton.[6]  In accordance with Hamilton's family-friendly philosophy, Hamilton informed Speight that he was not interested in taking part in a violent video game.

### 2.  The *Gears of War* Video Game Series and the Cole Character

*Gears of War* is an extremely violent cartoon-style fantasy video game series.  The series takes place on an Earth-like planet called Sera that is populated by a wide variety of post-apocalyptic, crumbling structures.  In the game, highly stylized, outlandish, cartoonish human characters are in violent conflict on Sera with a race of exotic reptilian humanoids known as the Locust Horde.[7]  The Locust Horde reptilian humanoids are rumored in the in-game narrative to have been born out of a research accident related to Imulsion, a fictional energy source.

---

[6] Hamilton alleges that the shoot 'em up video game Speight mentioned in 1998 would eventually become the video game series *Gears of War*.
[7] This characterization of the video game series is supported in part by my in-chambers review of the games themselves, which were put into the record along with a game console and controller by Defendants.  *See* Declaration of Ambika Doran in Support of Motion to Dismiss, (ECF No. 25-3) (attaching *Gears of War* games).

However, the Locust Horde no longer inhabits its former subterranean environment after being driven above-ground by other subterranean reptilian creatures.  The series primarily follows a military unit called Delta Squad, which consists of the fictional characters Marcus Fenix, Dominic Santiago, Damon Baird, and the Cole character.  The reptilian humanoid members of the Locust Horde engage in extremely violent conflict with the Delta Squad and the rest of the planet's surface-dwellers; their conflicts center on fantastical, cartoonish firearms controlled by the players.

Throughout the *Gears of War* series, Defendant Lester Speight, Hamilton's former wrestling mate, provided the voice for the Cole character.[8]  In the game, the Cole character is a large, muscular, African American male who is a former professional athlete who played the fictional game thrashball, a highly fantastical and fictionalized sport that loosely imitates American football in some ways, although the characters do not play thrashball.  Speight had input into how the Cole character looked and had influence over the character.  For example, Speight decided which voice to use for Augustus Cole.  He also suggested that the game designers make the Cole character's arms bigger.

Cole and Hamilton share broadly similar faces, hair styles, races, skin tones, and large, muscular body builds.  Cole's and Hamilton's voices also sound similar.  The default Cole character in *Gears of War* is adorned in military gear.[9]  The Cole character does not change in appearance from *Gears of War 1* and *Gears of War 2*.

However, in *Gears of War 3*, the third game in the series, players can obtain alternative "skins," or appearances, for the characters, including the Cole character.  In *Gears of War 3*, for

---

[8] Although the in-game appearance for the characters are three-dimensional computer-generated images ("CGI"), their voices are provided by actors.
[9] Defendants' uncontested submission of an "exemplary" Cole character is included as Appendix B.

instance, players can utilize a skin or outfit for Cole known as Superstar Cole.  This skin is a nonmilitary or civilian look for Cole.[10]  Superstar Cole wears a fedora, sunglasses, sweatbands or compression bandages, a watch, and a chain necklace with a replica of a *Gears of War* weapon hanging from it.  There is also a skin for Thrashball Cole, which emphasizes Cole's background as a former thrashball player.[11]

The Cole character also has a distinctive in-game persona.  Plaintiff Hamilton testified that the Cole character's personality is "totally the opposite" of Hamilton's own personality and the personality of the Hard Rock Hamilton wrestling character.  Specifically, Hamilton stated that, although the Cole character shares his likeness, the Cole character "is ignorant, he's boisterous and he shoots people, he cusses people out, that's not me.  What [the Cole character is] portraying . . . it's totally against what I believe in."  Deposition of Plaintiff Lenwood Hamilton at 174:16-20.  Hamilton went on to assert that "for [Defendants] to take my likeness and . . . portray me as a person that shoots people, curses their mom out, and cusses like [the Cole character] does, that's not portraying Hard Rock Hamilton.  That ain't me.  I was highly mad, and still am.  That ain't me. . . .  [T]hat's not my temper.  That's not my attitude. . . . But as far as being vulgar, disrespectful to women, disrespectful to anything.  [The Cole character] stands for totally the opposite of what I was trying to do . . . ."  *Id.* at 231:24-232:10.

It is not possible at any point in the *Gears of War* series to use the Cole character—or any other character—to engage in professional wrestling.  At no point in any of the *Gears of War* games is the Cole character identified as a wrestler, former wrestler, or aspiring wrestler.  *Id.*

---

[10] A comparison of Cole dressed as Superstar Cole and Hard Rock Hamilton is displayed in Appendix D of this memorandum.

[11] A comparison of Cole dressed as Thrashball Cole and Hard Rock Hamilton is displayed in Appendix C of this memorandum.

There is similarly no reference in the games to the Hard Rock Hamilton name or any other biographical information about Hard Rock Hamilton.

## II. LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Id.* In ruling on a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party has met its initial burden, the nonmoving party must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. Both parties must support their factual positions by: "(A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The inquiry at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## III.    DISCUSSION

Defendants move for summary judgment on Hamilton's claims. Defendants argue, among other things, that each of Hamilton's claims is barred by the First Amendment. Specifically, Defendants contend that their rights to expressive speech under the First Amendment outweigh Hamilton's right to publicity, if any, because the Cole character is a "transformative use" of the Hard Rock Hamilton character. *See generally Hart v. Elec. Arts, Inc.*, 717 F.3d 141, 166 (3d Cir. 2013) (adopting and applying the Transformative Use Test in relation to First Amendment protection against right of publicity cases). I agree and I will grant Defendants' motion on this ground.

### A.  The Right of Publicity, the First Amendment, and the Transformative Use Test

Hamilton alleges several causes of action stemming from his allegation that Defendants' creation of the Cole character in the *Gears of War* video game series infringes on his right of publicity: (1) a statutory claim for unauthorized use of name or likeness under 42 Pa. C.S.A. § 8316; (2) a common law claim for misappropriation of publicity; (3) a common law claim for invasion of privacy by misappropriation of identity; and (4) a cause of action for unjust enrichment stemming from Defendants' use of his likeness. *See* Second Am. Compl. ¶¶ 86-93; 97-99; 100-102; 103-105.[12] Generally, the right of publicity recognizes that individuals like Hamilton may have valuable interests in their name, likeness, and identity. *See Hart*, 717 F.3d at 148-49. Lawsuits like this one seek to protect an individual where others have "misappropriate[ed] his [or her] identity for commercial exploitation." *Id.*

In cases where a plaintiff asserts a right to publicity, the First Amendment may serve as a defense. *See generally, e.g.*, *Hart*, 717 F.3d 141. Accordingly, in this case, Defendants argue

---

[12] Hamilton agrees that each of his Pennsylvania statutory and common law claims stems from Defendants' invasion of his "right of publicity." *See, e.g.*, Pl.'s Br. in Opp. to Defs.' Mot. for Summ. J. at 25-29.

that the First Amendment bars Hamilton's right of publicity claims.  Specifically, Defendants

contend that their creation of the *Gears of War* video game series is expressive speech and that

their right to free expression outweighs Hamilton's right to publicity.  Video games like *Gears of*

*War* are expressive speech protected by the First Amendment because "[l]ike the protected

books, plays, and movies that preceded them, video games communicate ideas—and even social

messages—through many familiar literary devices (such as characters, dialogue, plot, and music)

and through features distinctive to the medium (such as the player's interaction with the virtual

world)." *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 790 (2011).  As such, it is "self-evident"

that "video games are protected as expressive speech under the First Amendment."  *Hart*, 717

F.3d at 148 (citing *Brown*, 786 U.S. at 790).

When parties assert competing rights to publicity and free expression in situations like

this, a court must "balance the interests underlying the right of free expression against the

interest in protecting the right of publicity."  *Id.* at 149 (citing *Zacchini v. Scripps-Howard*

*Broad. Co.*, 433 U.S. 562, 574-75 (1977)).  In order to conduct this balancing test, the Third

Circuit utilizes the Transformative Use Test.  *Id.* at 163.  The Transformative Use Test was first

devised and developed by the California Supreme Court in *Comedy III Productions, Inc. v. Gary*

*Saderup, Inc.*, 21 P.3d 797, 807-11 (Cal. 2001), and subsequent caselaw.  Under the

Transformative Use Test:

> the balance between the right of publicity and First Amendment interests turns on
> whether the celebrity likeness is one of the "raw materials" from which an original
> work is synthesized, or whether the depiction or imitation of the celebrity is the
> very sum and substance of the work in question.  [Courts] ask, in other words,
> whether the product containing a celebrity's likeness is so transformed that it has
> become primarily the defendant's own expression rather than the celebrity's
> likeness. And when we use the word "expression," [courts] mean expression of
> something other than the likeness of the celebrity.

*Hart*, 717 F.3d 141, 159-60 (3d Cir. 2013) (quoting *Comedy III Productions*, 21 P.3d at 809).

In *Hart*, the Court applied the test to the video game *NCAA Football*. *Id.* at 165. Plaintiff Ryan Hart, a former college football star quarterback, sued Electronic Arts, Inc., the maker of the *NCAA Football* series for violating his right of publicity by featuring a Hart-like avatar in the game without compensating him. *Id.* at 144. In *NCAA Football*, video game players selected realistic depictions of college football teams and players, including Hart, to control the players' avatars in simulated college football games in simulated college football arenas. *Id.* at 146. As described by the Court in *Hart*:

> In no small part, the NCAA Football franchise's success owes to its focus on realism and detail—from realistic sounds, to game mechanics, to team mascots. This focus on realism also ensures that the "over 100 virtual teams" in the game are populated by digital avatars that resemble their real-life counterparts and share their vital and biographical information. Thus, for example, in NCAA Football 2006, Rutgers' quarterback, player number 13, is 6'2" tall, weighs 197 pounds and resembles Hart. Moreover, while users can change the digital avatar's appearance and most of the vital statistics (height, weight, throwing distance, etc.), certain details remain immutable: the player's home state, home town, team, and class year.

*Id*. After adopting the Transformative Use Test, the court in *Hart* applied the test to *NCAA Football* and found that the video game failed the test and that Hart could continue with his right of publicity claims against the defendant. *Id.* at 167. The Court found that the in-game Hart avatar's likeness and biographical information failed to transform the character from the actual Hart, and that no aspect of the in-game context in which the Hart avatar appears sufficed to satisfy the Transformative Use Test. *Id.* at 165-171.

The *Hart* case also discussed with approval two California cases applying the Transformative Use Test: *No Doubt* and *Kirby*. In *Kirby v. Sega of America, Inc.*, 50 Cal. Rptr. 3d 607 (Cal. Ct. App. 2006), the plaintiff musician, Kierin Kirby, claimed that Sega misappropriated Kirby's likeness and signature phrases to create Ulala, a video game character who was a reporter in the distant future. The court noted that Kirby used several identical signature phrases, including "ooh la la," "groove," "meow," "dee-lish," and "I won't give up."

*Id*. at 613.  Like the descriptions of Hamilton and Cole in this case, the court in *Kirby* also found similarities in appearance between the two characters based on hair style and clothing choice.  *Id*. The *Kirby* court held that, because there were some differences in appearance and movement between the two characters, Ulala was not merely a digital recreation of Kirby.  *Id*.  Thus, the court concluded that Ulala satisfied the Transformative Use standard.  *See also id*. at 617 ("[A]ny imitation of Kirby's likeness or identity in Ulala is not the sum and substance of that character.").

The *Kirby* Court "reject[ed] the claim that Ulala merely emulates Kirby."  *Id*. at 616. Even though, as here, "sufficient similarities preclude a conclusion that, as a matter of law, Ulala was not based in part on Kirby," the Court was "similarly unable to conclude, as a matter of law, that Ulala is nothing other than an imitative character contrived of 'minor digital enhancements and manipulations.'"  *See id*.  The Court found that because the Sega defendants "added new expression, and the differences are not trivial" and because "Ulala is not a mere imitation of Kirby," the defendants were entitled to summary judgment on First Amendment grounds.  *Id*.

The *Hart* Court also discussed the California Court of Appeal's decision considering the right of publicity in the video game context in *No Doubt v. Activision Publishing, Inc.*, 122 Cal. Rptr. 3d 397 (Cal. Ct. App. 2011).  In *No Doubt*, the rock band known as No Doubt sued the makers of *Band Hero*, a video game in which video game players perform as rock bands playing popular songs.  *Id*. at 401.  The video game player selects digital avatars to represent him or her as the band in the game, which included avatars specifically intended to depict the likeness of the band being used, including an avatar of the band No Doubt.  *Id*.  After the band had a contract dispute with the video game makers, No Doubt sued for violation of their rights to publicity in relation to the game's continued use of their name, likeness, and biographical information.  *Id*. at 402.

The California Court of Appeal applied the Transformative Use Test to find that defendant's creation of the No Doubt avatars failed the test. The Court noted that the No Doubt avatars were "at all times immutable images of the real celebrity musicians." *Id*. at 410. The Court also noted that "even literal reproductions of celebrities can be 'transformed' into expressive works based on the context into which the celebrity image is placed." *Id*. (citing *Comedy III*, 21 P.3d at 811). The court ultimately found that "no matter what else occurs in the game during the depiction of the No Doubt avatars, the avatars perform rock songs, the same activity by which the band achieved and maintains its fame." *Id*. at 410-11. The court explained:

> [T]he avatars perform [rock] songs as literal recreations of the band members. That the avatars can be manipulated to perform at fanciful venues including outer space or to sing songs the real band would object to singing, or that the avatars appear in the context of a videogame that contains many other creative elements, does not transform the avatars into anything other than the exact depictions of No Doubt's members doing exactly what they do as celebrities.

*Id*. at 411. Finally, the *No Doubt* Court noted that the defendant video game maker's use of realistic digital depictions of the rock band No Doubt was motivated by a desire to appeal and sell to the band's fans "because it encourages [fans] to purchase the game so as to perform as, or alongside, the members of No Doubt." *Id*.

In balancing the interests involved in the Transformative Use Test, the *Hart* Court specifically focused on whether plaintiff's "identity" had been transformed. "Identity" includes "not only [a plaintiff's] likeness, but also his [or her] biographical information." *Hart*, 717 F.3d at 165. "It is the combination of these two parts—which, when combined, identify the digital avatar as an in-game recreation of [a plaintiff]—that must be sufficiently transformed." *Id*. In cases relating to video games, a character's identity also includes or can be transformed by the

"context" in which the video game character appears and operates, including where the character is depicted to be in the game and what the character does and can do in the game. *Id.*

B.  Application

The Cole character satisfies the Transformative Use standard.  If the Hard Rock Hamilton character influenced the creation of the Cole character at all, the Hard Rock Hamilton character was at most one of the "raw materials" from which the Cole character was synthesized: the Hard Rock Hamilton is not the "very sum and substance of the" Cole character. *Hart*, 717 F.3d 141, 160 (3d Cir. 2013) (quoting *Comedy III Productions*, 21 P.3d at 809).

First, as discussed in further detail below, although the Hard Rock Hamilton and the Cole characters' likenesses certainly share some similarities, the Hard Rock Hamilton character's identity is obviously not the "very sum and substance" of the Cole character's identity. *Id.* Second, the context in which the Cole character appears and performs is profoundly transformative.  Cole—who engages in extraordinarily stylized and fantastical violence against cartoonish reptilian humanoids on a fictional planet in a fictional war—does not "do[] what the actual" Hard Rock Hamilton character does—engage in professional wrestling on Earth. *Hart*, 717 F.3d at 166.  Because of these transformative characteristics of the Cole character, Defendants meet the Transformative Use standard.

### 1. The Cole character's likeness and biographical information

The Cole character's identity transforms the Hard Rock Hamilton character's identity with respect to the characters' likenesses, biographical information, and personalities. First, the Cole character's biographical information substantially transforms the Hard Rock Hamilton character's biographical information. The Cole character's most important biographical information—his name, Augustus "Cole Train" Cole—bears absolutely no resemblance to the Hard Rock Hamilton character's name. The two characters' biographical similarities—Hard Rock Hamilton formerly played football for the NFL's Philadelphia Eagles and the Cole character formerly played a fictional game called thrashball for a fictional team named the Eagles—do not suffice to overcome the fact that the Plaintiffs do not identify any other aspects of the Cole character's biography (for instance, age or birthplace) that are shared by the Cole character.

The Cole character's likeness shares some broad similarities with the Hard Rock Hamilton character. On Plaintiff's account, the two characters are both large, muscular, African American males with similar faces, hair styles, skin tone, and large body build. However, the Cole character's primary avatar wears futuristic, cartoonish heavy armor on his torso and carries various weaponry, as seen in Appendix B. Hard Rock Hamilton does not wear any of these clothing components. The primary Cole avatar does not have a hat, jewelry, tie, or cuffs like Hard Rock Hamilton. The fact that the two characters share a broad likeness of skin tone, race, body build, and hair style does not suffice to overcome the conclusion that the Hard Rock Hamilton likeness is not the sum and substance of the of the Cole character's likeness.

Hamilton admits in his own testimony that the Cole character's persona is profoundly different from the persona of Hard Rock Hamilton. Specifically, Hamilton stated that, although he asserts that the Cole character shares his likeness, the Cole character "is ignorant, he's

boisterous and he shoots people, he cusses people out, that's not me. . . .  And it's totally against what I believe in."  Deposition of Plaintiff Lenwood Hamilton at 174:16-20.  Hamilton went on to assert that "for [Defendants] to take my likeness and . . . portray me as a person that shoots people, curses their mom out, and cusses like [the Cole character] does, that's not portraying Hard Rock Hamilton.  That ain't me . . . that's not my temper.  That's not my attitude. . . . [the Cole character] stands for totally the opposite of what I was trying to do . . . ."  *Id.* (quoting Deposition of Plaintiff Lenwood Hamilton at 231:24-232:10).  Hamilton's characterization of the profound difference between the persona of the Cole character and the persona of the Hard Rock Hamilton character further bolsters the conclusion that the Cole character transforms the Hard Rock Hamilton character.

The *Kirby* case informs my analysis of whether the Cole character's likeness, biographical information, and persona constitute a transformative use of the Hard Rock Hamilton character's identity.  Just as in *Kirby*, even if there were "sufficient similarities" between the Hard Rock Hamilton character and the Cole character to preclude a conclusion that, as a matter of law, the Cole character was not based in part on Hard Rock Hamilton, I am "similarly unable to conclude, as a matter of law, that" Cole is "nothing other than an imitative character contrived of minor digital enhancements and manipulations."  *Id.* at 616.  The Cole character's likeness, biographical information (including but not limited to the Augustus "Cole Train" Cole name) and persona, although it may be similar in some ways to the Hard Rock Hamilton character, are absolutely not "the sum and substance" of the Hard Rock Hamilton character's likeness and identity.

The Parties dispute whether the focus of my analysis should be on the primary Cole character or on the secondary Cole avatars.  I do not reach this issue because each of the Cole

14

character avatars in this case—the primary Cole avatar, the Superstar Cole avatar, and the Thrashball Cole avatar—transforms the Cole character. Players can opt to use the Superstar Cole and Thrashball Cole avatars only in *Gears of War 3* and *Gears of War 4*—the third and fourth editions of the *Gears of War* series. Appendix C includes a comparison of exemplary images of Hamilton himself—not Hard Rock Hamilton—as a football player compared to the Cole character as a thrashball player. Even here, there are sufficient creative differences between the two characters to satisfy the Transformative Use standard. Thrashball Cole again bears a different name, is depicted playing a fictionalized sport (although the player cannot actually use the Thrashball Cole to play thrashball in the game context), wears boots, dons only pads emblazoned with the number 83, and wears an outsized belt over dirtied football pants with visible stitching and what is ostensibly a cape. In contrast, Hamilton's footwear is not visible; he wears a small belt with white football pants; he wears a full football jersey; and Hamilton never wore the number 83. And—again—Plaintiffs put forward no evidence that the Thrashball Cole character is identified as a professional wrestler or that the Thrashball Cole's transformative persona varies from the typical Cole character persona.

Appendix D contains a comparison of exemplary images of Superstar Cole and Hard Rock Hamilton. Although Superstar Cole does in fact bear a closer resemblance to Hard Rock Hamilton than the primary Cole character, even the Superstar Cole character's physical likeness is sufficiently transformative to satisfy the Transformative Use standard. In addition, the Superstar Cole character again has a different name than the Hard Rock Hamilton character. Plaintiffs put forward no evidence to suggest that the Superstar Cole is a wrestler or that the Superstar Cole character's persona is different from the profoundly transformative persona of the Cole character generally. Finally, the Superstar Cole character wears sunglasses and a heavily-

worn undershirt with a bracelet and band of fabric around his forearm that differs from Hard Rock Hamilton, who wears a tie, collared shirt, formal vest, no sunglasses, and a chain.  The optional Superstar Cole character's persona, likeness, and biographical information transform Hard Rock Hamilton's persona, likeness, and biographical information.

### 2.  The Cole character's context

In addition to the Cole character's transformation of the Hard Rock Hamilton character's likeness, biographical information, and personality, the Cole character appears in the profoundly transformative context of the *Gears of War* games.  In the *Gears of War* games, the Cole character does not—and cannot—"do[] what the actual" Hard Rock Hamilton does.  *Hart*, 717 F.3d at 166.  Hard Rock Hamilton performed as a professional wrestler in Soul City Wrestling on the planet Earth.  In *Gears of War*, the Cole character does not perform as a professional wrestler in Soul City Wrestling on the planet Earth.  This case is thus different from *Hart*, discussed above, where the digital avatar of plaintiff and Rutgers football star quarterback Ryan Hart appeared in-game in the context of playing as a Rutgers football star quarterback during simulated Rutgers football games in the Rutgers football stadium.  *See Hart*, 717 F.3d at 166. This case is also distinguishable from *No Doubt*, 122 Cal. Rptr. 3d at 410-11, because the Cole character does not even perform as a professional wrestler on the fictional planet Sera.  In *No Doubt*, also discussed above, digital avatars of the rock band No Doubt appeared in the context of and were controlled by players performing rock music as the rock band No Doubt, with the only difference being the fictionalized setting.  *Id.*

Instead, the Cole character appears and performs in *Gears of War* in an extraordinarily fanciful situation.  Players use the Cole character to battle formerly-subterranean reptilian humanoids on the fictional planet Sera as part of a broader military engagement stemming from a fictional energy source.  Cole fights with other characters as a member of the Delta Squad.

These differences—between professional wrestling on Earth as Hard Rock Hamilton and battling formerly-subterranean reptilian humanoids as the Cole character—is such a profoundly transformative change in relevant context that even taking Hamilton's characterizations of the likeness between the Cole character and Hard Rock Hamilton in the light most favorable to Hamilton, *Gears of War* is protected by the First Amendment under the Transformative Use standard.

IV.    **CONCLUSION**

I will grant Defendants' motion for summary judgment.


s/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF** on  9/26/2019



Second Amended Complaint ("SAC"), Ex. B.

**Appendix B**



Plaintiff's Statement of Undisputed Material Facts ¶ 9.

 

Pl.'s Statement of Facts at ¶ 20.

**Appendix D**



